UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERIKAL PRODUCTS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | 24 C 11292 |
| SIMON CAVE, JAMES MCMANUS, DARYL BURBY, SOLUTIONC LLC, TIMSONS, INC., STEPHEN RIPORTELLA, and IAN SHARP, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are Defendants Simon Cave, James McManus, Daryl Burby, and SolutionC LLC's motion to dismiss Plaintiff Amerikal Products Corporation's ("Amerikal") complaint under Federal Rule of Civil Procedure 12(b)(6), and Amerikal's Motion to Certain Facts and Exclude Exhibits to Defendants' Motion to Dismiss. For the reasons explained below, Amerikal's motion is granted in part and denied in part, and Defendants' motion is granted in part and denied in part.

## BACKGROUND

At a high level, Plaintiff Amerikal Products Corporation's ("Amerikal") complaint alleges that Defendants, including former Amerikal employees Simon Cave, James McManus, and Daryl Burby (together, the "Cave Defendants"), conspired with

Defendant Timsons, Inc. ("Timsons-US"), its President, Defendant Riportella, and Director, Defendant Sharp (together, the "Timsons Defendants"), to misappropriate Amerikal's trade secrets and confidential information, interfere with its customer agreements, and divert its business to competing entities. The following facts are taken from the complaint and are presumed true for the purposes of this motion. All reasonable inferences are drawn in Amerikal's favor.

Amerikal is an Illinois-based company that manufactures pressroom products aimed at reducing environmental harm and improving employee safety. Prior to 2014, Timsons-US's parent company, through one of its UK subsidiaries, Timsons, Ltd., manufactured certain unique offset book presses used throughout the world, including in the United States. In September 2014, Timsons-US's parent company stopped manufacturing the offset book presses and formed a new company, Timsons Engineering, Ltd. (UK), which continued to manufacture parts for the offset book presses still in service.

Timsons-US provided service and field support for the offset book presses manufactured by Timsons, Ltd. (UK). The Cave Defendants were employees of Timsons-US and provided services to Timsons-US's offset book press customers on an as needed and when needed basis.

In March 2016, Timsons-US stopped providing service and field support to its offset book press customers but continued to provide parts as produced by Timsons Engineering, Ltd. (UK). In May 2016, Amerikal agreed to take on the business of

providing the service and field support for the Timsons Engineering, Ltd. (UK)'s manufactured offset book presses that Timsons-US previously provided. As part of this process and new business, Amerikal agreed to employ the Cave Defendants, along with other former Timsons-US employees, to provide customers with uninterrupted service and field support. Cave ultimately became the Vice President of Engineering and McManus became the Vice President of Electrical Engineering.

In October 2023, Cave traveled to England and India to explore business opportunities with a potential machine builder in India who could build new book presses for TimsonsCPI, a joint venture between Timsons Engineering, Ltd. (UK) and another UK company that was formed in September 2021. Cave met with Sharp during this trip to discuss taking Amerikal's business. Cave returned from his trip with plans to leave Amerikal and take the customer base and business opportunities with him, moving them to Timsons-US.

After Cave's return, Timsons-US continued to communicate with customers and potential customers of Amerikal in an effort to have those customers execute purchase orders for service contracts with Amerikal. In January 2024, however, Cave informed Amerikal that the Cave Defendants would be resigning their positions and rejoining Timsons-US. This was a blow to Amerikal as it would leave the company unable to support ongoing contracts, including service contracts Cave entered into after October 2023 in his capacity as Amerikal's VP of Engineering.

In early February 2024, Cave, using his Amerikal email account, began communicating directly with Amerikal's customers and informing them of "an upcoming change to the service support currently provided by" Amerikal. Dkt. # 1, ¶ 56. Specifically, Cave informed the Amerikal customers that as of April 1, 2024, "the current Amerikal service personnel including [Cave], will be transferring back to the Timsons organization." *Id.* ¶ 58. The emails were electronically signed by Cave in his capacity of "VP Engineering." Essentially, Cave was attempting to convince customers to abandon their contracts with Amerikal and sign new ones with Timsons-US, effectively ending Amerikal's ability to continue in that line of business. Cave was coordinating all efforts to interfere with the Amerikal customers and contracts with Sharp and Riportella.

Because the departure of the Cave Defendants left Amerikal without the personnel necessary to continue to service the contracts it had with its offset book press customers, Amerikal attempted to mitigate its losses and coordinate with the Cave Defendants and Timsons-US to transition the contracts from Amerikal to Timsons-US.

On February 21, 2024, Riportella emailed Amerikal customers and informed them that the "Amerikal Service Team [would be] rejoining Timsons Inc." *Id.* ¶ 64. Riportella stated that "Simon Cave is authorized on behalf of Timsons to help facilitate changing the past service agreements and the previously quoted projects from the Amerikal name to Timsons Inc dependent upon customer approval." *Id.* ¶ 66.

4

To further minimize Amerikal's potential losses and liability exposure to the current and departing offset book press customers, Amerikal attempted to negotiate an agreement with Timsons-US to indemnify Amerikal for any losses or liability related to the service contracts for which Timsons-US would be taking over from Amerikal. On March 18, 2024, however, Sharp emailed Amerikal and informed it that Timsons-US would not be providing Amerikal with an indemnity agreement and Timsons-US had "no intention to take any of the ongoing or future press related contracts." *Id.* ¶ 69.

On March 24, 2024, Cave informed Amerikal that he would be moving forward with the same plans with a company owned exclusively by Cave, SolutionC. On that same date, Cave, using his Amerikal email account, began communicating with Amerikal's Timsons-US offset book press customers, informing them that Timsons-US would no longer be involved in taking over the Amerikal business but that the Cave Defendants were still resigning their employment with Amerikal as of March 31, 2024. Cave informed the customers that the Cave Defendants still intended to "re-unify with Timsons" but in the interim, the Cave Defendants "in an effort to avoid disruption and continue providing support to the Timson client base from April 1st, we formed a new company: SolutionC LLC." *Id.* ¶ 72. Cave signed his email as "Ex-service manager of Timsons Inc and Amerikal Products Corp Owner of SolutionC LLC." *Id.* ¶ 74. Although the email stated that SolutionC was a new company, it had actually been formed by Cave in April 2020.

Amerikal alleges Defendants conspired with each other to steal Amerikal's trade secrets and knowingly stole and converted Amerikal's trade secrets in an effort to obtain the business opportunities for themselves and deprive Amerikal of such business opportunities throughout the United States and abroad. As a result of Defendants' improper and illegal actions, Amerikal is no longer able to provide any installation, warranty, maintenance, or service to its customers owning Timsons Engineering, Ltd. (UK) offset book presses and has had, or will have, all of its services contracts related to that line of work terminated, with the work going to the Cave Defendants and resulting in Amerikal losing potentially over three million dollars in annual sales. In addition, Defendant McManus retained a computer and software owned by Amerikal and, using this information, the Cave Defendants conspired with one of Amerikal's customers/former customers, which delayed promised work to be performed and potentially opened Amerikal up to liability.

Based on the foregoing, Amerikal initiated this lawsuit. Amerikal's seven-count complaint brings claims for misappropriation of trade secrets in violation of the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1839(3), and the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/2(d); civil RICO violations; civil conspiracy; breach of fiduciary duty; tortious interference with prospective economic advantage; and tortious interference with contract. The Cave Defendants move to dismiss all claims against them under Rule 12(b)(6) for failure to state a claim, and Amerikal moves to strike certain factual allegations in the motion to dismiss and certain attached exhibits.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

The Cave Defendants move to dismiss all claims against them, and Amerikal moves to strike certain facts set forth in the motion to dismiss as well as to exclude several attached exhibits. The Court will address each motion in turn.

### I. Amerikal's Motion to Strike

The Cave Defendants attached a number of exhibits to their motion and inserted additional background facts which Amerikal contends are not supported by the allegations in its complaint. Thus, Amerikal has moved to strike the majority of these exhibits and related facts.

When a defendant attaches documents to its motion to dismiss under Rule 12 (b)(6), "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (citing Fed. R. Civ. Pro. 12([d]). However, the Court may consider the attached documents at the motion to dismiss stage "if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (citation omitted). This "narrow exception" to the general rule barring consideration of materials outside the pleadings exists to "prevent parties from surviving a motion to dismiss by artful pleadings or by failing to attach relevant documents." *188 L.L.C. v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also Brownmark Films, L.L.C. v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (same). The exception is not "intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment[.]"

In their response to Amerikal's motion to strike, the Cave Defendants indicate they "have no issue with the Court not considering" Exhibits 1 and 8. Accordingly, Amerikal's motion is granted with respect to Exhibits 1 and 8.

The Court also agrees with Amerikal that Exhibits 3, 5, 9, and 10 are not referred to in any way in Amerikal's complaint and thus do not fall within the narrow exception permitting the Court's consideration of these documents. While the Cave Defendants

8

argue these exhibits are central to their defense, the time to make such arguments is at summary judgment, where the Court evaluates the merits of the case, rather than on a motion to dismiss, where the Court assesses the sufficiency of the pleadings. Amerikal's motion is granted with respect to Exhibits 3, 5, 9, and 10.

This leaves Exhibits 2, 4, 6, and 7. Amerikal does not object to the Court's consideration of Exhibit 2 (emails from Cave to Amerikal customers informing them of the upcoming change from Amerikal to Timsons-US), the last page of Exhibit 4 (the February 21, 2024 letter from Riportella to Amerikal customers), or the first page of Exhibit 7 (Sharp's March 18, 2024 email to Amerikal stating Timsons had no intention of taking on any of the ongoing or future contracts). The Court will therefore consider these documents in evaluating the Cave Defendants' motion to dismiss.

However, the Court declines to consider the remainder of Exhibits 4 and 7 as well as Exhibit 6. In the Court's view, consideration of these documents would improperly convert the motion to dismiss into a motion for summary judgment.

## II. The Cave Defendants' Motion to Dismiss

The Cave Defendants move to dismiss all claims against them. The Court will address each claim in turn.

### A. Misappropriation of Trade Secrets

ITSA and DTSA prohibit the misappropriation of trade secrets under Illinois and federal law, respectively. Because the statutes are substantially similar, courts can analyze separate claims brought under these laws together. *See Petrochoice LLC v.*

9

Case: 1:24-cv-11292 Document #: 60 Filed: 07/08/25 Page 10 of 19 PageID #:406

*Amherdt*, 2023 WL 2139207, at *7 (N.D. Ill. Feb. 21, 2023). A plaintiff bringing ITSA and DTSA claims must show "that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *REXA, Inc. v. Chester*, 42 F.4th 652, 662 (7th Cir. 2022) (quoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003)); *see also Aon PLC v. Infinite Equity, Inc.*, 2021 WL 4034068, at *12 (N.D. Ill. Sept. 3, 2021) (DTSA claim requires same elements).

### 1. Trade Secrets

A trade secret consists of (1) business-related information, (2) that the owner has taken reasonable means to keep secret, and (3) that generates economic value through its secrecy. *See* 18 U.S.C. § 1839(3). At the motion to dismiss stage, trade secret "allegations [are] adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (collecting cases); *see also AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 920–21 (N.D. Ill. 2001) ("Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in the public disclosure of purported traded secrets.").

Here, Amerikal asserts that Defendants had access to product development, product design, pricing, marketing materials, marketing methods and processes, customer lists and information, prospective customer lists and information, information

concerning finances, business and affairs of Amerikal, revenue numbers, and company structure. Other courts in this district have found similar descriptions of confidential information to be specific enough to survive a motion to dismiss. *See*, *e.g.*, *GE v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 831–32 (N.D. Ill. 2019) (finding customer needs and preferences, pricing and margin information, information about confidential bids, confidential acquisition strategies and targets sufficient); *Inmar, Inc. v. Vargas*, 2018 WL 6716701, at *3–4 (N.D. Ill. Dec. 21, 2018) (finding business development plans for existing clients, pricing and marketing strategies, lead sources, and research dossiers sufficiently specific to survive dismissal); *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (allegation that the defendant "was exposed to confidential information such as customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports" sufficed at the pleading stage); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 412 (N.D. Ill 2001) (finding trade secret description of marketing strategies, pricing data, and confidential business practices satisfied the notice pleading requirements).

Although some of Amerikal's customer and business information may have been known to the Cave Defendants through their prior employment with Timsons-US, Amerikal is not claiming that its customer information is the only purported trade secret. Rather, Amerikal alleges that it invested substantial time, money, and resources in, *inter alia*, producing marketing initiatives, creating business plans and marketing strategies,

11

and compiling information regarding the unique needs and preferences of its customers. Amerikal further alleges that it invested time and resources in maintaining the confidentiality of this information—though the lack of any confidentiality or non-disclosure agreements weakens this claim. However, the complaint also alleges that Amerikal obtained new customers and contracts during the time the Cave Defendants worked for Amerikal. Amerikal's description of its trade secrets passes muster for now.

### 2. Misappropriation

"Misappropriation can be shown one of three ways—by improper acquisition, unauthorized disclosure, or unauthorized use." *Covenant Aviation Sec.*, 15 F. Supp. 3d at 819. Amerikal has not shown improper acquisition, namely because the Cave Defendants were Amerikal employees as well as former Timsons-US employees who brought their own knowledge of the Timsons-US customer base to Amerikal. Nor has Amerikal sufficiently alleged unauthorized disclosure. There are no allegations that plausibly demonstrate the Cave Defendants improperly disclosed trade secrets to the Timsons Defendants. Amerikal itself gave the Timsons Defendants and the Cave Defendants information on their customers and their contracts. And the fact that the Timsons Defendants did not move forward with the customer contracts makes it unlikely that the Cave Defendants disclosed Amerikal's business and marketing strategies.

Amerikal's allegations that the Cave Defendants used or continue to use its trade secrets are not supported by sufficient facts. Amerikal's allegations regarding improper

use are on information and belief. "[A]llegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions[.]" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). Other than alleging the Cave Defendants are engaging in the same business as Amerikal, there is nothing from which the Court can reasonably infer that the Cave Defendants are actually using Amerikal's trade secrets through work at SolutionC.

Amerikal argues it has sufficiently alleged misappropriation through the "inevitable disclosure doctrine," which "allows a plaintiff to 'prove a claim of trade secret misappropriation by demonstrating that the defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets.'" *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 832 (N.D. Ill. 2019) (quoting *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 2017 WL 1954531, at \*5 (N.D. Ill. 2017)). When evaluating whether the disclosure of trade secrets is inevitable, the Court will consider "(1) the level of competition between the former employer and the new employer; (2) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer." *CZS Holdings LLC v. Kolbe*, 2021 WL 1837385, at \*4 (N.D. Ill. 2021) (cleaned up).

The complaint is silent as to the third factor, although "that silence is not surprising, because a complaint is not likely to contain any allegations about what, if anything, the competitor did to safeguard the plaintiff's secrets." *Molon Motor*, 2017 WL 1954531, at *5. The level of competition is clear, as the Cave Defendants left Amerikal to perform the exact services they provided at Amerikal to Amerikal's customers through Timsons-US and SolutionC. They also hold comparable positions in the new business, SolutionC.

Even so, there is not enough in the complaint suggesting inevitable disclosure. Again, the majority of the critical allegations are on information and belief only. As former Timsons-US employees, the Cave Defendants undoubtedly have their own specialized knowledge from their time there. Something more than speculation that the Cave Defendants are using Amerikal's trade secrets (rather than business and marketing strategies used at Timsons-US) is required to survive the Cave Defendants' motion to dismiss. *See*, *e.g.*, *Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993 at *2 (N.D. Ill. 2018) (holding that allegations that the defendants, former employees with access to trade secrets, left for a competitor offering the same services to the same clientele are "not enough to justify [the plaintiff's] otherwise unsupported suspicions that the defendants used or disclosed" trade secrets). Amerikal's ITSA and DTSA claims are dismissed without prejudice.

### B. Federal Civil RICO

In Count II, Amerikal alleges that all Defendants violated the federal RICO statute, 18 U.S.C. § 1962(c), by conducting an enterprise through a pattern of racketeering activity. In Count III, Amerikal alleges that all Defendants are liable for conducting a RICO conspiracy in violation of 18 U.S.C. § 1962(d).

Since its enactment, courts, including the Seventh Circuit, have repeatedly stressed the limited availability of civil RICO liability and confirmed that RICO does transform "garden-variety" state-court business disputes involving allegations of fraud into federal lawsuits for treble damages. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 337 (7th Cir. 2019) (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 522 (7th Cir. 1995) ("The murkiness of RICO's parameters coupled with its alluring remedies have led many plaintiffs to take garden variety business disputes and dress them up as elaborate racketeering schemes."). To establish a RICO violation, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Menzies*, 943 F.3d at 336. The Cave Defendants argue that Amerikal has failed to allege an enterprise, the requisite conduct, or a pattern of racketeering.

Because the Court finds that Amerikal has failed to adequately allege misappropriation of trade secrets, Amerikal cannot satisfy the predicate acts requirement of a RICO claim, thus dooming both its RICO and RICO conspiracy claims. These claims against the Cave Defendants are dismissed without prejudice.

15

### C. Breach of Fiduciary Duty

A claim for breach of fiduciary duty must allege: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 69. A duty of loyalty to the employer extends to officers, directors, and employees. *Id.* (citing *Mullaney, Wells & Co. v. Savage*, 78 Ill. 2d 534, 546–47 (1980)). "Accordingly, a fiduciary cannot act inconsistently with his agency or trust and cannot solicit his employer's customers for himself." *Id.*

Amerikal alleges a fiduciary relationship existed between Amerikal and the individual Cave Defendants—Burby was an employee, and Cave and McManus were officers. The Cave Defendants' primary argument in support of dismissal of the breach of fiduciary duty claim is that Amerikal "approved" of their activities. The allegations of the complaint, however, tell a much different story. Amerikal alleges that the Cave Defendants each breached their fiduciary duties in various ways, including competing with the company while still employed, exploiting their positions for their own benefit, and hindering Amerikal's ability to continue its business. This is sufficient to withstand the Cave Defendants' motion to dismiss.

### D. Tortious Interference Claims

For its tortious interference with a contract claim, Amerikal must plead (1) the existence of a valid and enforceable contract between Amerikal and another; (2) the Cave Defendants' awareness of the contractual relationship between Amerikal and

16

another; (3) the Cave Defendants' intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the Cave Defendants' wrongful acts; and (5) damage to Amerikal. *Chadha v. N. Park Elem. Sch. Ass'n*, 2018 IL App (1st) 171958, ¶ 60 (quoting *Cress v. Recreation Servs., Inc.*, 341 Ill. App. 3d 149, 175 (2003)). For its tortious interference with prospective economic advantage claim, Amerikal must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the Cave Defendants' knowledge of the expectancy, (3) an intentional and unjustified interference by the Cave Defendants that induced or caused a breach or termination of the expectancy, and (4) damage to Amerikal resulting from the Cave Defendants' interference." *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 23 (quoting *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 300–01 (2001)).

As an initial matter, Amerikal's complaint is silent as to any specific actions taken by Defendant Burby in connection with these claims. The tortious interference claims against Defendant Burby are dismissed without prejudice.

As for Cave and McManus, the primary argument in support of dismissal of these claims is the fact that Amerikal worked with them to transition customer contracts over to Timsons-US and/or SolutionC. This, the Cave Defendants say, precludes any tortious interference claim because there was no unjustified interference. In response, Amerikal relies on the fact that, while it entered into discussions to resolve the issues between the parties, no agreement was ever reached. The Court accepts Amerikal's

allegations as true at this stage. Additionally, the fact that Amerikal attempted to mitigate its losses by transitioning contracts does not change the allegations that the Cave Defendants were working to drive customers away from Amerikal and toward Timsons-US and SolutionC before Amerikal attempted to work with the Cave Defendants to find a solution. Amerikal's tortious interference claims against Cave and McManus stand, for now.

### E. Civil Conspiracy

Lastly, "[c]ivil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means." *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 19. To state a civil conspiracy claim, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. *Id.* ¶ 20. The essence of a conspiracy claim is not the agreement but rather the tortious acts performed in furtherance of the agreement. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63 (1994). "It necessarily follows, therefore, that a conspiracy is not an independent tort and, where a plaintiff fails to state an independent cause of action underlying the conspiracy allegations, the claim for conspiracy also fails." *Tri-Plex Tech Servs. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 40. Amerikal has sufficiently stated tortious interference claims against Defendants Cave and Burby, and the allegations of the complaint support a conspiracy claim involving those Defendants and the Timsons Defendants. The motion

to dismiss this claim against Defendants Cave and Burby is denied but is granted as to Defendant McManus.

<h3 align="center"><u>CONCLUSION</u></h3>

For the foregoing reasons, Amerikal's motion to strike [32] is granted in part and denied in part as set forth above. The Cave Defendants' Motion to Dismiss [28] is also granted in part and denied in part. Counts I through III are dismissed without prejudice as to the Cave Defendants. Counts V through VII are dismissed without prejudice as to Defendant Burby only. Amerikal may file an amended complaint by 7/29/2025, should it choose to do so.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 7/8/2025